UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                     :

JENNIFER SHIN,                     :

             Plaintiff,       :

                           :           23-cv-10996 (LJL)

        -v-                 :

                           :       OPINION & ORDER

NBC UNIVERSAL MEDIA, LLC and JEFFREY   :
PINARD *in his individual and professional capacities*,   :

              Defendants.   :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

    *Pro se* Plaintiff Jennifer Shin ("Plaintiff"), asserts claims against Defendants NBCUniversal Media, LLC ("NBCUniversal") and Jeffrey Pinard ("Pinard," and, together with NBCUniversal, "Defendants"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2(a)(1); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107; New York City's Earned Safe and Sick Time Act (the "Earned Safe and Sick Time Act"), N.Y.C. Admin. Code §§ 20-911, *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611, *et seq.*; 42 U.S.C. § 1985; and 42 U.S.C. § 1986; as well as common-law claims for defamation. Dkt. No. 16. Defendants move to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 18.

    For the following reasons, the motion to dismiss is granted.

## BACKGROUND

    For purposes of this motion, the Court accepts as true the allegations of Plaintiff's complaint. *See Simon v. Fed. Prison Indus. Inc.*, 2024 WL 3487940, at *1 (S.D.N.Y. July 18,

2024).  The Court construes *pro se* Plaintiff's complaint liberally and broadly to state the strongest claims it suggests.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The Court additionally considers factual allegations in Plaintiff's opposition papers to the extent they are consistent with the complaint's allegations.  *See Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 677 (S.D.N.Y. 2023).

### A.    Allegations of Discrimination

Plaintiff worked for NBCUniversal as Director of Product Management from February 2018 through November 2019.  Dkt. No. 16 ¶¶ 1, 4(a), 13.  In that role, she was supervised and managed by Pinard, who is currently Senior Vice President & Chief Information Officer, AdSales and Advanced Advertising, Product & Engineering at NBCUniversal.  *Id.* ¶ 4(c).

Plaintiff alleges that she was subjected to disparate and unequal treatment while working for NBCUniversal.  Pinard set "very different" expectations for Plaintiff compared to her male coworkers.  *Id.* ¶¶ 19–20.  He did not reprimand or discipline Plaintiff's male coworkers who failed to properly complete tasks and expected Plaintiff to work longer hours to make up their work.  *Id.* ¶¶ 22–23, 25–26, 29, 45.  Pinard blamed Plaintiff for delays caused by her male coworkers.  *Id.* ¶¶ 32–33.  Credit for Plaintiff's work was given to a male coworker and Pinard reduced Plaintiff's role on a project to develop a contextual intelligence platform ("AdSmart"), removed her access to files and resources, excluded her from meetings, discredited her work, and had members of the team create websites to give a male colleague credit for Plaintiff's work.  *Id.* ¶ 50.

On October 16, 2018, Plaintiff made a complaint to human resources at NBCUniversal, stating that she was being treated worse than her male colleagues because of her gender.  *Id.* ¶ 34. In retaliation, Pinard reduced Plaintiff's role on the AdSmart project, giving greater responsibility to a male colleague.  *Id.* ¶¶ 36, 54.

In March 2019, Pinard gave Plaintiff an oral performance review where he did not mention any specific concerns about Plaintiff's performance. *Id.* ¶ 55. Nevertheless, shortly after that review, Pinard began reassigning Plaintiff's work, removed her access to files and resources, excluded her from meetings, publicly discredited her work, and began lodging baseless criticisms of her performance. *Id.*

At some unspecified time, Pinard began fabricating false claims about Plaintiff and falsely accused her of being tardy and absent from work. *Id.* ¶¶ 46–47. Human resources did not investigate Pinard's claims, including after Plaintiff raised concerns about the falsity of his accusations. *Id.* ¶¶ 46–49.

At another unspecified time, Plaintiff informed Pinard that she would need leave for medical appointments due to a medical issue she was experiencing. *Id.* ¶ 53. Pinard blamed Plaintiff for not being present in the office at all times during business hours even though she was working on nights, weekends, and holidays to make up for her absences. *Id.* ¶¶ 52–53. Plaintiff also alleges that the hostility and harassment she experienced negatively impacted her health. *Id.* ¶¶ 58–59. Plaintiff informed Pinard that she needed to take time off for an urgent surgery. *Id.* ¶¶ 56, 60. Plaintiff alleges that the nature of her request "should have triggered [NBCUniversal] to discuss with [Plaintiff] the availability of FMLA leave." *Id.* ¶ 56. Pinard and NBCUniversal did not advise Plaintiff of her right to request and take FMLA leave. *Id.* ¶¶ 61, 71. Instead, Pinard "left no doubt that he would consider any delays in [Plaintiff's] projects caused by medical-related absences to be a performance issue." *Id.* ¶ 71. After informing Pinard and NBCUniversal about the surgery, Plaintiff received an email from Rebecca Wright ("Wright"),[1] asking to meet with her.

---

[1] Though not entirely clear from the complaint, Wright seems to be an NBCUniversal employee in the company's human resources department.

*Id.* ¶ 62.  At the meeting, Plaintiff described her previous gender discrimination complaint and asked Wright not to speak with Pinard out of fear of further retaliation.  *Id.* ¶¶ 62–63.  Wright insisted that she needed to speak to Pinard to further investigate the issue.  *Id.* ¶ 63.

Plaintiff was reassigned to report to Mae Ibera ("Ibera"), but continued to experience disparate treatment.  *Id.* ¶¶ 64, 72.  Ibera criticized Plaintiff's work "regardless of its actual merit," and, on one occasion, gave Plaintiff less time to prepare for a presentation than previous presenters had received.  *Id.* ¶¶ 65–66.  Ibera "sabotaged" Plaintiff by giving her specific verbal instructions, and then sending emails falsely claiming that Plaintiff had performed the wrong assignment or missed a deadline.  *Id.* ¶ 67.  Ibera treated Plaintiff like her assistant and relocated Plaintiff's desk to better permit Ibera to monitor Plaintiff.  *Id.* ¶¶ 68–70.  Ibera changed meetings at the last minute, gave Plaintiff unreasonable deadlines, and unfairly criticized Plaintiff.  *Id.* ¶ 76.

Ibera expressed hostility toward Plaintiff's medical absences and told Plaintiff that she should not make medical appointments during business hours.  *Id.* ¶ 74.  Even after being granted medical leave, Plaintiff was expected to attend meetings from home.  *Id.* ¶ 75.  Ibera asked Plaintiff "inappropriate" questions and made "inappropriate" comments regarding Plaintiff's doctors' appointments and procedures, such as criticizing Plaintiff for scheduling appointments at times inconvenient for Ibera and expressing doubt that an appointment ran late.  *Id.* ¶ 76.  In July 2019, human resources and Ibera began requiring Plaintiff to submit documentation if she needed more than two consecutive sick days, contrary to NBCUniversal policy.  *Id.* ¶ 77.  Plaintiff continued to be assigned more work than her peers and was still expected to meet a higher standard of performance in spite of her medical condition.  *Id.* ¶ 78

Plaintiff alleges that on or about August 19, 2019, Plaintiff "submitted a detailed response to the review,[2] outlining the dated and baseless nature of the criticisms, and pointing out that many of the 'concerns' raised appeared related to [Plaintiff's] medically-related absences and preapproved teaching schedule." *Id.* ¶ 89. Plaintiff also included a cover letter explaining her concerns regarding discrimination and retaliation and requesting that NBCUniversal investigate the issues raised. *Id.*

Plaintiff retained counsel in September 2019 in connection with her discrimination claim, but NBCUniversal declined to negotiate with her attorneys and instead argued that Plaintiff's treatment was due to her own performance. *Id.* ¶ 90. On November 14, 2019, Plaintiff's counsel sent a letter stating that NBCUniversal's continued baseless criticism of Plaintiff's performance was retaliatory, that Ibera's challenges to Plaintiff's medical appointments was inappropriate and illegal, and that Plaintiff would be moving forward with her legal claims given NBCUniversal's lack of response to Plaintiff's numerous requests for an investigation and for it to cease retaliating against her. *Id.* ¶¶ 91–92.[3] On November 15, 2019, Plaintiff was told that she was being terminated. *Id.* ¶ 93.

## B.    Plaintiff's EEOC Charge

On September 10, 2020, Plaintiff submitted a questionnaire to the Equal Employment Opportunity Commission ("EEOC") through the EEOC's public portal. Dkt. No. 45-3 ¶ 3. On September 11, 2020, Plaintiff filed charges of gender discrimination and retaliation with the EEOC. *Id.* ¶ 5; Dkt. No. 45-2 ¶ 3.[4] Plaintiff states that due to the pandemic, she was unable to

---

[2] It is not clear from the complaint to what "review" Plaintiff is referring.

[3] The complaint states that an undefined "we" sent the letter. The Court reads the allegation to refer to Plaintiff's counsel at the time.

[4] Plaintiff's filings disagree as to the date on which she filed the EEOC charge. Plaintiff's complaint states that she filed the charge on September 11, 2020. Dkt. No. 16 ¶ 5. Plaintiff's December 9 declaration states both that she "submitted [the] charge by email on September 11,

file the charge at the EEOC office and instead submitted the charge by email.  Dkt. No. 45-2 ¶ 3; Dkt. No. 45-3 ¶ 4.  Plaintiff states that on September 14, 2020, she received an email stating that her charge was timely.  Dkt. No. 45-2 ¶ 3; Dkt. No. 45-3 ¶ 4.

In August 2023, Plaintiff called the EEOC to update her contact information.  Dkt. No. 45-2 ¶ 6; Dkt. No. 45-3 ¶ 6.  Plaintiff avers that on that call, the EEOC representative informed Plaintiff that her case had been closed, that the system did not have any information regarding her case, and that Plaintiff should contact her local EEOC office.  Dkt. No. 45-2 ¶ 6; Dkt. No. 45-3 ¶ 6.  Plaintiff visited an EEOC office on August 24, 2023, and was advised to submit a new report.  Dkt. No. 45-2 ¶ 7; Dkt. No. 45-3 ¶ 7.  On August 29, 2023, Plaintiff spoke to a manager at the New York EEOC office who agreed to issue a right to sue letter but, due to unusual circumstances, could not provide the right to sue letter immediately.  Dkt. No. 45-2 ¶ 8; Dkt. No. 45-3 ¶ 8.

The EEOC issued a Dismissal of Charge and Notice of Right to Sue on September 14, 2023.  Dkt. No. 16[5] at 28.[6]  On September 14, 2023, the EEOC emailed Plaintiff that new

---

2020" and that she "did not have legal representation after [she] filed [her] charge with the EEOC on September 10, 2024."  Dkt. No. 45-3 ¶¶ 3, 14.  Plaintiff's December 13 declaration states that she "did not have legal representation after [she] filed [her] charge with the EEOC on September 10, 2020" and that the declaration was attaching a screenshot of the EEOC public portal taken on August 29, 2023, displaying the charge submission date as September 10, 2020.  Dkt. No. 45-3 ¶ 14.  However, no exhibit was attached to the declaration.  *See generally id.*  Plaintiff's memorandum of law in opposition to the motion to dismiss included what appears to be a screenshot of the EEOC portal dated August 29, 2023, stating that an inquiry was submitted on September 10, 2020, as well as a screenshot of the EEOC portal dated July 23, 2024, stating that a charge was submitted on September 10, 2020.  Dkt. No. 43 at 12, 15.  District courts may "consider new factual allegations made in a *pro se* plaintiff's papers *where they are consistent* with those in the complaint."  *Mira v. Argus Media*, 2017 WL 1184302, at *3 n.4 (S.D.N.Y. Mar. 29, 2017) (Sullivan, J.) (emphasis added).  The Court accordingly disregards the September 10, 2024 and September 10, 2020 dates and instead credits the September 11, 2020 date stated in the complaint.

[5] Citations to this document refer to the pagination in the ECF heading.

[6] Although Plaintiff originally alleged that the EEOC issued a "determination" on September 14, 2023, and did not issue the right to sue letter until September 22, 2023, the right to sue letter Plaintiff attached to the complaint states that it was issued on September 14, 2023.  *Compare* Dkt.

documents were available on the EEOC website.  Dkt. No. 45-2 ¶ 9; Dkt. No. 45-3 ¶ 9.  The email

did not include any attachments.  Dkt. No. 45-2 ¶ 9; Dkt. No. 45-3 ¶ 9.  The EEOC sent a reminder

email on September 22, 2023.  *Id.* ¶ 10; Dkt. No. 45-3 ¶ 10; Dkt. No. 16 at 27.  The reminder email

also did not include any attachments.  Dkt. No. 45-2 ¶ 10; Dkt. No. 45-3 ¶ 10.  Plaintiff logged

into the EEOC online portal and downloaded the right to sue letter on September 23, 2023.  Dkt.

No. 45-2 ¶ 11; Dkt. No. 45-3 ¶ 11.

Plaintiff avers that between August 29, 2023,[7] the date the EEOC "reopened [her] case,"

and December 15, 2023, she "diligently sought legal representation and spoke with more than 5

law firms regarding [her] cases and continued searching for counsel the week before [she] filed

[her] complaint."  Dkt. No. 45-2 ¶ 12.

## PROCEDURAL HISTORY

Plaintiff initiated this suit by filing a *pro se* complaint on December 15, 2023.  Dkt. No. 1.

Plaintiff filed an amended complaint on June 11, 2024.  Dkt. No. 16.  The amended complaint

alleges seventeen causes of action: (1) discrimination and hostile work environment under

Title VII; (2) retaliation under Title VII; (3) discrimination under the NYSHRL; (4) retaliation

under the NYSHRL; (5) aiding and abetting discrimination and retaliation under the NYSHRL;

(6) discrimination under the NYCHRL; (7) retaliation under the NYCHRL; (8) aiding and abetting

retaliation under the NYCHRL; (9) vicarious liability for discrimination and retaliation under the

---

No. 16 ¶¶ 6–7 *with id.* at 28.  "[I]f the allegations of a complaint are contradicted by documents
made a part thereof, the document controls and the court need not accept as true the allegations of
the complaint."  *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y.
1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994); *accord Mumin v. City of New York*, 2024 WL 5146085,
at *9 (S.D.N.Y. Dec. 17, 2024).

[7] Plaintiff's December 9 declaration states that she sought legal representation between August 29,
2024 and December 15, 2023.  Dkt. No. 45-2 ¶ 12.  The Court presumes that the achronological
reference to 2024 is a typographical error and construes the declaration to state August 29, 2023
instead.  *See also id.* ¶ 8 (stating that on August 29, 2023, the EEOC agreed to issue a right to sue
letter).

NYCHRL; (10, 13) sick leave under the New York City Administrative Code; (11–12) failure to

provide notice under the FMLA; (14–15) defamation under New York common law; (16) violation

of 42 U.S.C. § 1985; and (17) violation of 42 U.S.C. § 1986. *Id.* ¶¶ 96–142.

On April 22, 2024, Defendants' counsel submitted a Freedom of Information Act ("FOIA")

request to the EEOC seeking all available information relating to Plaintiff's EEOC charge against

NBCUniversal. Dkt. No. 20 ¶ 2. The EEOC responded with documents on May 10, 2024. *Id.*

On July 2, 2024, Defendants moved to dismiss the amended complaint along with a

memorandum of law in support of the motion. Dkt. Nos. 18–19. Defendants also submitted an

attorney declaration attaching the documents that the EEOC sent in response to Defendants'

counsel's FOIA request. Dkt. No. 20.[8]

On November 11, 2024, Defendants moved to stay discovery pending resolution of

Defendants' motion to dismiss the complaint. Dkt. No. 37. Plaintiff did not oppose Defendants'

request for a stay and the Court granted the motion on November 13, 2024. Dkt. No. 40.

On December 9, 2024, Plaintiff filed a memorandum of law in opposition to the motion to

dismiss. Dkt. No. 43. Plaintiff's opposition was untimely, as the Court had ordered Plaintiff to

email a copy of her opposition to the motion to dismiss to Defendants' counsel and to file it on the

---

[8] The Court does not rely upon those documents in connection with the motion to dismiss, as Plaintiff avers that she did not have knowledge of the EEOC's FOIA production prior to July 2, 2024 and did not append the production to the complaint or reference it in her complaint. Dkt. No. 45-2 ¶ 13. Defendants' filing additionally failed to comply with Local Civil Rule 12.1, which requires a represented party moving to dismiss against a party proceeding *pro se*, to serve and file a provided notice if the represented party refers to matters outside the pleadings in support of the motion to dismiss. Loc. Civ. R. 12.1. Although Defendants argue that the Court may take judicial notice of public records such as administrative records and reports, Dkt. No. 19 at 3 n.1, there is no indication that the materials at issue were actually publicly available, Dkt. No. 20. *See Harris v. Off. of N.Y. State Comptroller*, 2022 WL 814289, at *12 (S.D.N.Y. Mar. 17, 2022) (declining to take judicial notice of government records because they "are not publicly available[;] [r]ather they are internal records within [the government office]"); *see also In re Chembio Diagnostics, Inc. Sec. Litig.*, 586 F. Supp. 3d 199, 216 (E.D.N.Y. 2022).

docket no later than December 6, 2024.  Dkt. No. 40.  In light of Plaintiff's *pro se* status, and the nature of Defendants' motion, the Court will consider Plaintiff's untimely opposition papers.  *See Posr v. City of N.Y.*, 2012 WL 4378049, at *6 n.5 (S.D.N.Y. Sept. 25, 2012).

On December 23, 2024, Defendant filed a reply memorandum of law in support of the motion to dismiss.  Dkt. No. 44.  Defendant also filed an attorney declaration attaching two emails from Plaintiff to Defendant and two declarations by Plaintiff in opposition to the motion to dismiss. It appears from the emails that on December 9, 2024, Plaintiff sent the *pro se* intake unit of the Southern District of New York an email attaching her declaration and then forwarded the email and declaration to Defendant.  Dkt. Nos. 45-1, 45-2.  On December 13, 2024, she sent the *pro se* intake unit a slightly different version of the declaration and then forwarded it to Defendant.  Dkt. No. 45-3.  Both declarations are dated December 6, 2024.  Dkt. Nos. 45-2, 45-3.  The *pro se* unit did not file either declaration on the docket.  It explained to the Court that the documents it received from Plaintiff were malformed and could not be filed.  Defendant does not raise any argument that the Court should not consider the declarations, merely describing them as "untimely."  Dkt. No. 44 at 1 n.1.  The Court will accordingly consider the declarations in connection with the instant motion to dismiss.  *See Posr*, 2012 WL 4378049, at *6 n.5.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 40 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). This obligation "is especially true when dealing with pro se complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002). However, while the Court construes *pro se* pleadings liberally, this does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam). Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007). "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

District courts may consider new factual allegations made in a *pro se* plaintiff's opposition papers where they are consistent with the complaint's allegations, but will not consider entirely new claims nor allow a plaintiff to use opposition filings to rewrite the complaint. *See Generation*

*Next Fashions*, 698 F. Supp. 3d at 677 (citing *Braxton v. Nichols*, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 n.1 (S.D.N.Y. 2007), *aff'd*, 340 Fed.Appx. 723 (2d Cir. 2009); *Weerahandi v. Am. Statistical Ass'n*, 2015 WL 5821634, at *8 (S.D.N.Y. Sept. 30, 2015)).

## DISCUSSION

Defendants argue that Plaintiff's Title VII, FMLA, defamation, Sections 1985 and 1986 claims and some of plaintiff's state and city claims are time-barred.  Dkt. Nos. 19, 44.  Plaintiff argues that her claims are timely because she filed a timely EEOC charge and because the relevant deadlines and statutes of limitations are subject to equitable tolling.  Dkt. No. 43[9] at 1.

## I.    Timeliness

### A.    Title VII

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  "The administrative exhaustion requirement applies to pro se and counseled plaintiffs alike."  *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599–600 (2d Cir.1999) (per curiam)).  "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Fowlkes*, 790 F.3d at 393–98.  Because exhaustion is an affirmative defense, the defendant bears the burden of establishing the plaintiff's failure to timely exhaust administrative remedies.  *See Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009); *cf. Domitz v. City of Long Beach*,

---

[9] Citations to this document refer to the pagination in the ECF heading.

737 F. App'x 589, 590 (2d Cir. 2018) (summary order) (affirming dismissal of discrimination claim where "the complaint contained information that suggested the EEOC charge was not timely filed").

Plaintiffs asserting Title VII claims must file a complaint with the EEOC or an equivalent state agency within 300 days of the allegedly discriminatory action. *See* 42 U.S.C. § 2000e-5(e)(1); *Gindi v. N.Y.C. Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred." (internal quotation marks omitted)). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*; *see Richards v. Dep't of Educ. of City of N.Y.*, 2022 WL 329226, at *6 (S.D.N.Y. Feb. 2, 2022). "Timeliness is measured from the date that the employee receives notice of the discriminatory decision." *Walker v. Linklaters LLP*, 948 F. Supp. 2d 396, 399 (S.D.N.Y. 2013).

Plaintiff alleges that she received notice of the latest incident of discrimination—her termination—on November 15, 2019. *Id.* ¶ 93. Therefore, absent equitable tolling, Plaintiff must have filed the EEOC charge no later than September 10, 2020, 300 days after that date, for any of Defendants' allegedly discriminatory conduct to be actionable. Plaintiff states that she filed the charge on September 11, 2020, 301 days after her termination. Dkt. No. 16 ¶ 5; Dkt. No. 45-2 ¶ 3. It is therefore apparent on the face of Plaintiff's complaint that the EEOC charge was untimely. *See Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) (holding that an EEOC charge

filed 301 days after plaintiff was terminated was untimely); *Starks v. Metro. Transp. Auth.*, 2022 WL 814668, at *3 (S.D.N.Y. Mar. 17, 2022) ("A Title VII claim is time barred if the claim is filed even one day late.").[10]    Plaintiff's Title VII claims are resultingly time-barred unless Plaintiff demonstrates that the deadline was tolled.  *See Starks*, 2022 WL 814668, at *3–4; *Domitz*, 737 F. App'x at 590.

Plaintiff notes that in light of the Covid-19 pandemic, Governor Cuomo issued Executive Order 202.8 to toll certain filing deadlines.  Dkt. No. 43 at 5–6.  Executive Order 202.8 directed, in relevant part:

> [A]ny specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled.

N.Y. Exec. Order 202.8.  The Governor "later issued nine subsequent executive orders that extended the suspension" so that it tolled subject statutes of limitations for the 228 days between March 20, 2020 and November 3, 2020.  *Miehle-Kellogg v. Cnty. of Suffolk*, 2024 WL 5120017, at *5 (E.D.N.Y. Dec. 16, 2024) (citing N.Y. Exec. Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72).

"This Court has previously held that the various executive orders issued throughout the COVID-19 pandemic 'did not purport to toll time periods prescribed by federal law.'"  *Romero v.*

---

[10] Although Plaintiff declares that on September 14, 2020, she received an email from an unspecified sender stating that her charge was timely, Dkt. No. 45-2 ¶ 3, even if the Court assumes that she received such an email from the EEOC, the Court is not bound by the EEOC's timeliness findings, *see Nero v. MTA N.Y.C. Transit Auth.*, 2016 WL 6781230, at *3 (E.D.N.Y. Nov. 16, 2016) ("[P]laintiff points to nothing in any employment discrimination statute that would give the EEOC the unilateral ability to reinstate a statutory filing period that had already expired at the time the administrative claim was filed.").

*Manhattan & Bronx Surface Transit Operating Auth.*, 2022 WL 624451, at *5–6 (S.D.N.Y. Mar. 2, 2022) (quoting *O'Rourke v. Ehsan Food Corp.*, 2020 WL 6894663, at *3 (S.D.N.Y. Nov. 24, 2020)) (citing *Esqueda v. NYU Langone Hosps.*, 2021 WL 4340731, at *2 (S.D.N.Y. Sept. 23, 2021))).  Because the 300-day requirement for Title VII claims is a product of federal, rather than state or local law, *see* 42 U.S.C. § 2000e-5(e)(1), the executive orders do not apply to Plaintiff's time to file an EEOC charge.

Plaintiff next argues that equitable tolling is warranted.  Dkt. No. 43 at 7–8.  The doctrine of equitable tolling "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996).  A litigant may equitably toll a federal statute of limitations only if he establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).  "[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citations and alterations omitted). The Second Circuit has stated that "[e]quitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period, where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Id.* (citations and alterations omitted) (collecting cases).

Because equitable tolling "'often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record,' . . . to withstand a motion

to dismiss based on a statute-of-limitations defense, a plaintiff need only plead facts that plausibly suggest equitable tolling should apply." *Levin v. Sarah Lawrence Coll.*, 2024 WL 4026966, at *18 (S.D.N.Y. Sept. 3, 2024) (quoting *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023)).  "Nonetheless, where a plaintiff provides no factual allegations that reflect that the plaintiff pursued their rights diligently and was frustrated by extraordinary circumstances, the court may reject a claim of equitable tolling made in a memorandum of law in opposition to a motion to dismiss."  *Id.*; *see also Lomako v. N.Y. Inst. of Tech.*, 440 F. App'x 1, 3 (2d Cir. 2011) (summary order).

Plaintiff's complaint and papers in opposition to the motion to dismiss do not support the inferences that she pursued her rights diligently.  Plaintiff avers that between August 29, 2023 and December 15, 2023, she "diligently sought legal representation."  Dkt. No. 45-2 at 12.  However, the period of time at issue is the 300 days between November 15, 2019 and September 10, 2020.  Plaintiff does not identify any action she took during that period to diligently pursue her rights.

Plaintiff also fails to identify any extraordinary circumstances that frustrated her ability to file a timely EEOC charge.  Plaintiff argues only that (1) she is a *pro se* litigant, and (2) she was unable to file her charge at the EEOC office due to the Covid-19 pandemic.  Dkt. No. 45-2 ¶ 3.  The Second Circuit has been clear that a litigant's *pro se* status does not warrant equitable tolling.  *See Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) (summary order); *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005); *Wheeler v. Artuz*, 6 F. App'x 57, 58 (2d Cir. 2001) (summary order); *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000).[11]  Plaintiff does not explain what about the Covid-19 pandemic frustrated her ability to file an EEOC charge before the deadline.  "Courts in this District have repeatedly found that the pandemic was not, in and of itself, a basis to

---

[11] Furthermore, it is not apparent that Plaintiff was actually unrepresented throughout the relevant time as Plaintiff had counsel at the time of her termination.  Dkt. No. 16 ¶¶ 90–92.

equitabl[y] toll limitations periods." *Garnes v. Pritchard Indus., Inc.*, 2023 WL 3980693, at *10 (S.D.N.Y. May 23, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 3977882 (S.D.N.Y. June 13, 2023).  To show the extraordinary circumstances required for equitable tolling, a plaintiff must do more than make a "passing reference to the pandemic or the resulting lockdown." *Hines v. United States*, 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) (citation omitted); *accord Verne v. N.Y.C. Dep't of Educ.*, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022).  Indeed, Plaintiff's averment that she was able to file the charge through email, Dkt. No. 45-2 ¶ 3, suggests that the pandemic did not present an insurmountable hurdle to timely filing, *see Garnes*, 2023 WL 3980693, at *10 (holding that equitable tolling did not apply where *pro se* litigant could have filed the untimely document by email).

Equitable tolling does not save Plaintiff's failure to properly exhaust administrative remedies with the EEOC, and Plaintiff's Title VII claims are resultingly time-barred.[12]

### B.    FMLA

Plaintiff alleges that Defendants violated the FMLA by failing to provide Plaintiff with notice of her right to take medical leave.  Dkt. No. 16 ¶¶ 127–134.  "[P]ursuant to 29 C.F.R. § 825.300(b), an employer becomes obligated to notify the employee of his eligibility to take FMLA leave when an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 107 (2d Cir. 2017) (citation and alterations omitted).  Defendants argue that Plaintiff's claim is untimely.  Dkt. No. 19 at 9; Dkt. No. 11 at 7–8.

---

[12] Defendants additionally argue that Plaintiff's complaint is untimely, as it was filed more than ninety days after she received notice of her right to sue.  Dkt. No. 19 at 6–8; Dkt. No. 44 at 6–7. Because the Court finds that Plaintiff's Title VII claim is time-barred due to the late-filed EEOC charge, the Court does not reach the issue of whether Plaintiff's complaint was timely.

Claims under the FMLA are subject to a two-year statute of limitations unless the violations are "willful," in which case the limitations period is three years. *See* 29 U.S.C. § 2617(c)(l)–(2); *Porter v. N.Y.U. Sch. of L.*, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam). "A violation is 'willful' when the employer, 'knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (summary order) (citing *Porter*, 392 F.3d at 531). It is not clear from the complaint precisely when Plaintiff informed Defendants of her need to take time off for a potentially FMLA-qualifying purpose. Dkt. No. 16 ¶ 56. However, the latest it could have been was November 15, 2019, the date on which she was terminated, and so the Court will treat that as the last relevant point at which Defendants could have violated the FMLA by failing to inform her of her rights. *See Tsatsani v. Walmart, Inc.*, 2020 WL 6688939, at *2 (S.D.N.Y. Oct. 26, 2020), *report and recommendation adopted*, 2020 WL 6701019 (S.D.N.Y. Nov. 13, 2020); *Porter v. N.Y.U. Sch. of L.*, 2003 WL 22004841, at *8 (S.D.N.Y. Aug. 25, 2003), *aff'd*, 392 F.3d 530. Even assuming Plaintiff alleged a "willful" violation of the FMLA, the statute of limitations would have necessitated filing suit no later than November 15, 2022. Instead, Plaintiff filed suit more than a year after that, on December 15, 2023. Dkt. No. 1. Plaintiff's FMLA claim is therefore presumptively untimely.

Plaintiff argues that equitable tolling is warranted because "[g]iven that the plaintiff is pro se and the extended harassment she endured, she did not have the legal knowledge to be able to differentiate between the numerous statutes of limitations on her own." Dkt. No. 43 at 8. However other than attempting to obtain counsel, Dkt. No. 45-2 ¶ 12, Plaintiff does not identify any steps she took to file a timely complaint. *See Stevenson v. City of N.Y. Dep't of Correction*, 2011 WL 13175927, at *4 (E.D.N.Y. July 11, 2011) ("A plaintiff's inability to secure counsel, despite a diligent search during the statutory period, does not provide a sufficient basis for equitable tolling

of the . . . limitation period."), *aff'd sub nom. Stevenson v. N.Y. Dep't of Corr.*, 489 F. App'x 517 (2d Cir. 2012); *accord James v. City Univ. of N.Y.*, 2022 WL 14753171, at *3–4 (S.D.N.Y. Oct. 25, 2022).  Furthermore, a litigant's "lack of familiarity with the legal system" does not present "rare and exceptional" circumstances.  *Huang v. United States*, 2003 WL 22272584, at *3 (S.D.N.Y. Oct. 2, 2003); *see also Ruiz v. Poole*, 566 F. Supp. 2d 336, 341 (S.D.N.Y. 2008) ("[I]gnorance of law does not constitute a rare and extraordinary circumstance that would merit equitable tolling.").  The allegation that Defendants failed to inform Plaintiff of her FMLA rights does not warrant equitable tolling absent indication that Defendants actively misled her.  *See Francis v. Blaikie Grp.*, 372 F. Supp. 2d 741, 748 (S.D.N.Y. 2005) (citing *Miller*, 755 F.2d at 24), *aff'd*, 177 F. App'x 121 (2d Cir. 2006).

Plaintiff's reference to Defendants' alleged harassment also does not present grounds for equitable tolling.  Because the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff, . . . [a] conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see Levin*, 2024 WL 4026966, at *19.  Plaintiff does not explain how the harassment prevented her from filing suit at an earlier date.  *See Levin*, 2024 WL 4026966, at *19 ("Because her 'assertions fail to describe her impairment with particularity and also fail to demonstrate a causal connection between how she felt and her ability to pursue her rights,' equitable tolling is inadequately invoked." (quoting *Dos Santos v. Assurant, Inc.*, 2022

WL 1537188, at *9 (S.D.N.Y. May 13, 2022), *report and recommendation adopted*, 625 F. Supp.

3d 121 (S.D.N.Y. 2022))).[13]

Plaintiff's FMLA claim is time-barred.

## C.    Defamation

Plaintiff alleges defamation against both Defendants under New York common law and

against Pinard under N.Y. C.P.L.R. § 3016(b).  Dkt. No. 16 ¶¶ 137–140.  As a threshold matter,

Section 3016(b) does not state an independent cause of action and instead sets forth the pleading

standards for claims of fraud or negligence.  N.Y. C.P.L.R. § 3016(b).[14]

Under New York law, "a defamation claim has a one-year statute of limitation that 'accrues

on the date of the first publication,'" i.e. when the slanderous statement is uttered.  *Kamdem-Ouaffo*

*v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 572 (S.D.N.Y. 2016) (quoting *Gelbard v. Bodary*, 270

A.D.2d 866, 867 (N.Y. 2000)), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016); *see* N.Y. C.P.L.R.

§ 215(3); *Koger v. Richardson*, 858 F. App'x 425, 426–27 (2d Cir. 2021) (summary order).  Unlike

the statutes of limitations for Plaintiff's federal causes of action, this state statute of limitations

was tolled by Executive Order 202.8 and its successors.  *See Flaherty v. Dixon*, 2023 WL 2051861,

at *4 (S.D.N.Y. Feb. 16, 2023).  Because "the Executive Orders suspended the limitations periods

from March 20, 2020 to November 3, 2020[,] . . . the limitations period would have been tolled for

7 months and 2 weeks, or a total of 228 days."  *Mineo v. Town of Hempstead*, 2024 WL 1077874,

at *12 (E.D.N.Y. Feb. 23, 2024), *report and recommendation adopted*, 2024 WL 1072569

---

[13] Plaintiff raises the same equitable tolling argument with respect to her claims pursuant to Section 1985 and Section 1986, her state and city law claims, and her claim for common-law defamation. Dkt. No. 43 at 8–9.  Plaintiff's equitable tolling argument fails with respect to those claims for the same reasons it fails with respect to Plaintiff's FMLA claim.

[14] N.Y. C.P.L.R. § 3016(a) is more relevant to defamation as it sets forth the pleading standard for claims of libel or slander.  However, it still does not a statutory cause of action separate and apart from the common law.

(E.D.N.Y. Mar. 12, 2024); *accord Nwoye v. Obama*, 2024 WL 911753, at *1 (2d Cir. Mar. 4, 2024) (summary order), *cert. denied*, 2024 WL 4426627 (Oct. 7, 2024).  Therefore, to make her claim timely, Plaintiff had to have filed suit within one year and 228 days of the allegedly defamatory statements.

Plaintiff states that the defamatory statements at issue are the false performance reviews she received.  Dkt. No. 43 at 8–9.  The complaint can also be read liberally to suggest that Pinard and Ibera's false statements regarding Plaintiff's tardiness and absences, discrediting her work, and unfairly criticizing her work product comprise additional bases for her defamation claims.  Dkt. No. 16 ¶¶ 32–33, 46, 48–50, 65–67.  Though the precise dates of these statements are unclear, it is apparent from the complaint that none of them occurred after November 15, 2019, the date of Plaintiff's termination.  *See generally id.*  Because Plaintiff filed the instant suit more than four years after that date, Dkt. No. 1, Plaintiff's defamation claims are time-barred.

### D.    NYSHRL and NYCHRL

Plaintiff asserts several causes of action for employment discrimination, retaliation, and aiding and abetting gender and disability discrimination and retaliation in violation of the NYSHRL and NYCHRL.  Dkt. No. 16 ¶¶ 102–126.  "Claims under the NYSHRL and NYCHRL are generally governed by a three-year statute of limitations."  *Riccardo v. N.Y.C. Dep't of Educ.*, 2016 WL 7106048, at *6 (S.D.N.Y. Dec. 2, 2016) (citing N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d)), *report and recommendation adopted sub nom. United States v. N.Y.C. Dep't of Educ.*, 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017).  Those state and local statutes of limitations were also tolled by the executive orders.  *See Pepaj v. Innovative Facility Serv.*, 2024 WL 5146112, at *6 (S.D.N.Y. Dec. 17, 2024); *Latif v. City of New York*, No. 2024 WL 1348827, at *4 (S.D.N.Y. Mar. 28, 2024).  The last alleged retaliatory or discriminatory incident is Plaintiff's termination on

November 15, 2019. Because that date is more than three years and 228 days before Plaintiff filed suit, Plaintiff's NYSHRL and NYCHRL claims are presumptively time-barred.

"Although the Second Circuit has not spoken on this issue, Courts in this Circuit have concluded that the statute of limitations is tolled with respect to claims brought under the NYSHRL and the NYCHRL pending resolution of a plaintiff's 'related' EEOC charge." *Parker v. Israel Disc. Bank of N.Y., Inc.*, 2022 WL 16833626, at *4 (S.D.N.Y. Nov. 9, 2022) (collecting cases); *see also Nixon v. TWC Admin. LLC*, 2017 WL 4712420, at *2–4 (S.D.N.Y. Sept. 27, 2017) (Nathan, J.); *Bernstein v. N.Y.C. Dep't of Educ.*, 2020 WL 6564809, at *11 (S.D.N.Y. Nov. 9, 2020). Plaintiff alleges that her EEOC charge alleged that NBCUniversal "discriminated against her on the basis of her gender." Dkt. No. 16 ¶ 5. Construing Plaintiff's complaint broadly and liberally, the Court therefore reads all of Plaintiff's gender-based discrimination and retaliation claims (including her claims based on vicarious liability and aiding-and-abetting liability) to have been tolled from when she filed the charge on September 11, 2020 through September 14, 2023, the date on which the EEOC dismissed the charge and issued Plaintiff's right to sue letter. *See Nixon*, 2017 WL 4712420, at *4 (calculating tolling based on pendency of plaintiffs' EEOC charges). Applying this tolling period, Plaintiff's claims arising from gender-based discrimination and retaliation are timely. However, any NYSHRL or NYCHRL claims unrelated to Plaintiff's allegations of gender discrimination were not tolled by the EEOC charge, and are therefore time-barred. *See Parker*, 2022 WL 16833626, at *4.

Plaintiff's tenth cause of action is for "sick leave under the administrative code." Dkt. No. 16 at 22. The allegations beneath that heading state merely that the claim incorporates all preceding allegations in the complaint and that "[t]he retaliatory actions to which Plaintiff was subjected could have dissuaded reasonable employees in her position from complaining of

discrimination." *Id.* ¶¶ 125–126.  Construing the complaint broadly and liberally, that claim could refer to multiple provisions of New York City's Administrative Code.  It could refer to  disability-related retaliation under the NYCHRL.  *See Stuart v. T-Mobile USA, Inc.*, 2015 WL 4760184, at *11 (S.D.N.Y. Aug. 12, 2015).  It could alternatively refer to violation of the Earned Safe and Sick Time Act, which states that an employer may only require documentation if an employee is absent more than three consecutive work days for sick time.  *See* N.Y.C. Admin. Code § 20-914(a)(2); *compare id. with* Dkt. No. 16 ¶ 84 (alleging NBCUniversal's human resources asked Plaintiff to submit medical documentation for absences that were less than three consecutive days).  It could refer to another provision of the Earned Safe and Sick Time Act which prohibits adverse employment actions against any employee that penalizes the employee for, or is reasonably likely to deter the employee from, using their sick leave as provided in the Act.  *See* N.Y.C. Admin. Code § 20-918(b).  No matter which of those provisions Plaintiff intended to invoke, the claim is time-barred.  NYCHRL claims are subject to the statute's three-year statute of limitations and, because any disability-related claim Plaintiff could assert would not be related to the EEOC charge, it would not be tolled by the pendency of that charge.  A two-year statute of limitations applies to claims under the Earned Safe and Sick Time Act, *see* N.Y.C. Admin. Code. § 20-924(f), and Plaintiff's claim pursuant to that statute similarly would not be tolled by the EEOC charge because it is unrelated to gender discrimination.  Plaintiff's sick leave claim is therefore untimely.

### E.    Sections 1985 and 1986

Section 1985 prohibits certain conspiracies to interfere with civil rights and contains three subsections.  *See* 42 U.S.C. § 1985.  It is not clear from the complaint which provision(s) of Section 1985 Plaintiff claims Defendants violated.

To the extent Plaintiff brings the claim under Section 1985(1), the claim fails as a matter of law, because "that statute only prohibits conspiracies which interfere with a federal officer in

the conduct of their official duties, and no federal officers are named here." *Cobbs v. City of Newburgh – City Council*, 2012 WL 12884367, at *9 (S.D.N.Y. Nov. 19, 2012*), aff'd sub nom. Cobbs v. City of Newburgh-City Council*, 546 F. App'x 34 (2d Cir. 2013).

Similarly, to the extent Plaintiff brings the claim under Section 1985(2), her claim fails as a matter of law, because that statute only prohibits conspiracies which "deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter," *Geaney v. McCarron*, 2003 WL 1701975, at *4 (S.D.N.Y. Mar. 31, 2003) (quoting *Chalal v. Paine Webber Inc.*, 725 F.2d 20, 23 (2d Cir. 1984)), and no such interaction with any witness is alleged here.

That leaves Section 1985(3) which provides, in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [those persons shall be liable for damages to a person who is] injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States.

42 U.S.C. § 1985(3). "To make out a claim under Section 1985(3), the plaintiff must adequately allege '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.'" *Abadi v. Am. Airlines, Inc.*, 2024 WL 1346437, at *22 (S.D.N.Y. Mar. 29, 2024) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam)). The first prong—a conspiracy—"need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

Plaintiff's complaint contains no allegations of a conspiratorial agreement or tacit understanding and her memorandum of law in opposition to the motion to dismiss, Plaintiff contains only the conclusory statement that "given that NBCU[niversal] and Mr. Pinard both conspired in their efforts to restrict her civil liberties, including her FMLA rights, 42 U.S.C. §§ 1985 and 1986 are applicable." Dkt. No. 43 at 9.  These allegations fail to sufficiently plead the existence of an agreement to discriminate against Plaintiff.  *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013); *Abdi v. Brookhaven Sci. Assocs., LLC*, 447 F. Supp. 2d 221, 226–27 (E.D.N.Y. 2006); *see also Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (noting that the Second Circuit "has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed").

Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian*, 7 F.3d at 1088 (citation omitted); s*ee* 42 U.S.C. § 1986.  "Thus, a § 1986 claim must be predicated upon a valid § 1985 claim." *Mian*, 7 F.3d at 1088 (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978), *cert. denied*, 436 U.S. 906 (1978)).  Because Plaintiff's Section 1985 claim fails to state a claim to relief, Plaintiff's Section 1986 claim therefore also fails to state a claim to relief.  *See McCaul v. Ardsley Union Free Sch. Dist.*, 2012 WL 1898897, at *4 (S.D.N.Y. May 3, 2012), *aff'd*, 514 F. App'x 1 (2d Cir. 2013).

Plaintiff's Sections 1985 and 1986 claims are additionally untimely.  "The statute of limitations for actions brought pursuant to . . . [Section] 1985 is three years." *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001) (citing *Jaghory v. N.Y. State Dep't of*

*Educ.*, 131 F.3d 326, 331 (2d Cir. 1997)).  Section 1986 claims are subject to a one-year statute of limitations.  *See* 42 U.S.C. § 1986; *Mian*, 7 F.3d at 1087.  Plaintiff alleges no action by Defendants following her November 15, 2019 termination—more than four years before she filed the complaint—that could give rise to a Section 1985 or 1986 claim.

## II.    Supplemental Jurisdiction

As explained above, all of Plaintiff's federal claims are time-barred.  Defendants argue that the Court should decline to exercise supplemental jurisdiction over the few timely claims— Plaintiff's state and city gender-based discrimination and retaliation claims.  Dkt. No. 19 at 15– 16; Dkt. No. 44 at 10.

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  In determining whether to exercise supplemental jurisdiction under Section 1367(c), the Court "balances the traditional 'values of judicial economy, convenience, fairness, and comity.'"  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  In "the usual case in which all federal-law claims are eliminated before trial . . . [these factors] will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7); *see also TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) ("Although there is no 'mandatory rule to be applied inflexibly in all cases,' it is clear that 'in the usual case in which all federal-law claims are eliminated before trial,' the balance of factors will weigh in favor of declining to exercise supplemental jurisdiction." (quoting *Cohill* 484 U.S. at 350)); *Klein & Co. Futures v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

This case is in the early stages, and no discovery has been taken. Having dismissed Plaintiff's federal claim under Title VI, the FMLA, and Sections 1985 and 1986, the Court declines to exercise supplemental jurisdiction over Plaintiff's state and city law claims. *See Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 638 (S.D.N.Y. 2021), *aff'd*, 2022 WL 710896 (2d Cir. Mar. 10, 2022).

## III.    Leave to Amend

Plaintiff requests the opportunity to replead any claims the Court dismisses. Dkt. No. 43 at 9. The Second Circuit has held that district courts should not dismiss a *pro se* plaintiff's complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). However, where the problem with the plaintiff's causes of action is substantive such better pleading will not cure it, repleading would be futile. *Id.* "Such a futile request to replead should be denied." *Id.* Courts often deny applications to replead untimely claims as futile. *See Kevilly v. New York*, 410 F. App'x 371, 375 (2d Cir. 2010) (summary order); *Sanders v. Simonovic*, 2021 WL 707060, at *13 (S.D.N.Y. Feb. 23, 2021). However, it is not apparent to the Court that an amended pleading is necessarily futile, as an amended pleading could potentially cure Plaintiff's deficient equitable tolling allegations, thereby making Plaintiff's claims timely. *See Glass v. A.K. Allen Co.*, 2010 WL 11632764, at *3 (E.D.N.Y. Oct. 21, 2010) (giving plaintiff leave to replead facts in support of equitable tolling). The Court accordingly dismisses Plaintiff's complaint without prejudice and grants Plaintiff leave to amend for the limited purpose of adding allegations to support equitable tolling.

## CONCLUSION

Defendants' motion to dismiss is GRANTED without prejudice.

Plaintiff's request for leave to amend the complaint is granted on narrow grounds: Plaintiff may amend the complaint only to add allegations in support of equitable tolling. Plaintiff may file a second amended complaint within 30 days of this Opinion and Order or, in other words, by March 10, 2025. If Plaintiff does not file a second amended complaint by March 10, 2025, the Court will direct the Clerk of Court to close the case.

The Clerk of Court is respectfully directed to close Dkt. No. 18.

SO ORDERED.

Dated: February 7, 2025
        New York, New York                        _____
                                                          LEWIS J. LIMAN
                                                   United States District Judge

27